UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY STEVEN HADDIX,

    Plaintiff,                                            Civil Action No. 13-CV-12850

vs.                                                     HON. BERNARD A. FRIEDMAN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on cross motions for summary judgment [docket entries 10, 15]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying his application for Social Security disability insurance benefits and Supplemental Security Income. An Administrative Law Judge ("ALJ") found that plaintiff has "coronary artery disease, degenerative disc disease, diabetes mellitus, and [a] history of carpal tunnel syndrome," but that he is nonetheless capable of performing his past work as a "residential assistant," and that he is therefore not disabled (Tr. 21, 25). Under § 405(g), the issue for the Court to resolve is whether the ALJ's decision, which the Appeals Council declined to review (*see* Tr. 1), is supported by substantial evidence, which the Supreme Court has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). In making this determination, the Court does not review the matter *de novo*, and it may not weigh the evidence or make credibility findings. If

supported by substantial evidence, defendant's decision must be upheld even if substantial evidence also would have supported a contrary decision and even if the Court might have decided the case differently in the first instance.

Plaintiff has a high school education, he has work experience as a bus driver and dorm supervisor, and he was 49 years old at the time of his administrative hearing (Tr. 34, 186-87). He claims to be disabled since June 2010 when he experienced an acute myocardial infarction and underwent angioplasty and stenting for his left anterior descending artery (Tr. 769). Plaintiff testified that he can stand for at most 10-15 minutes, walk across a parking lot before having to rest, sit for at most 30 minutes before having to stand, and lift at most 10-15 pounds (Tr. 35-36). Plaintiff also indicated he has difficulty using his hands because of carpal tunnel syndrome in his left wrist (Tr. 36), that his various medications cause him to feel "constantly dizzy" (Tr. 40), and that he must prop up his feet to relieve pain caused by neuropathy (Tr. 48). The ALJ found that plaintiff is capable of performing his past work as a "residential assistant" (Tr. 25), an apparent reference to plaintiff's job as a dorm supervisor, which required plaintiff to walk or stand six to seven hours, sit for one hour, climb for one hour, and frequently lift and carry supplies weighing 25 pounds and lift up to 50 pounds on occasion (Tr. 187).

The ALJ asked the vocational expert ("VE") to

> [a]ssume a person who cannot perform more than light work as that term is defined in the Social Security Regulations and in the Dictionary of Occupational Titles. And in addition, assume a person who should be able to alternate position for up to five minutes approximately every 30 minutes. The person should not have to climb ladders or stairs, should not have to kneel, crouch, or crawl, can only occasionally balance and stoop. Assume a person limited to frequent handling, fingering, feeling, and reaching. In addition, the person shuld not have to reach above shoulder level. There should be no exposure to hazards or vibrations. The person should not have to use

> leg controls. There should be no concentrated exposure to fumes, dusts, or gases and no exposure to extremes of temperature or humidity. The person should not need to drive as a work duty. Could someone with those limitations do either of the jobs you listed in your analysis.

(Tr. 50-51.) In response, the VE indicated that such a person could do plaintiff's past work as a residential assistant (Tr. 51). Asked to further limit the hypothetical person to "simple and routine work," the VE testified that such a person could work as a cashier or general office clerk (Tr. 51-52). Asked to further limit the hypothetical person to sedentary work, the VE testified that such a person could work as a general office clerk, an information clerk, a stock handler or packager (Tr. 52). On cross examination, the VE testified that the hypothetical worker could not perform any of these jobs if he could "stand for less than two hours in an eight hour day and sit for less than six hours in an eight hour day," or if he had to elevate his feet to "chest level during the workday" (Tr. 53).

Having reviewed the record and the parties' arguments, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence for the following reasons. First, the record does not support the ALJ's finding that plaintiff has the residual functional capacity to meet the exertional demands of his past work as a dorm supervisor. The ALJ's hypothetical question to the VE assumed "a person who cannot perform more than light work as that term is defined in the Social Security Regulations and in the Dictionary of Occupational Titles" (Tr. 50). Under 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The Dictionary of Occupational Titles ("DOT") defines light work as requiring "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly." *See* http://www.occupationalinfo.org/appendxc_1.html. The only evidence in the record regarding the

3

lifting requirements of plaintiff's dorm supervisor job indicates that he frequently lifted 25 pounds and sometimes 50 pounds. The ALJ's implicit finding that plaintiff cannot do "more than light work" therefore rules out his ability to lift the weights involved in his past work.

Plaintiff's ability to do his past work is also clearly ruled out by the ALJ's finding that he can do "no climbing of ladders or stairs" (Tr. 22), as the dorm supervisor job requires one hour per day of climbing (Tr. 187).

Nor does the record support the ALJ's finding that plaintiff can meet the sitting, walking and standing requirements of this past job. Plaintiff indicated his dorm supervisor job required him to walk for six hours, stand for seven hours, and sit for one hour (Tr. 187). As noted above, plaintiff testified that his ability to sit, stand and walk is severely limited by pain, shortness of breath and dizziness. Plaintiff's treating physician indicates that plaintiff can stand and/or walk for "less than 2 hours in an 8-hour workday" and that he can sit for "less than 6 hours in an 8-hour workday" (Tr. 546-47). The ALJ did not adequately explain her basis for finding that plaintiff can nonetheless stand and/or walk for seven hours. Indeed, the ALJ made no specific findings as to the length of time plaintiff can sit, stand and/or walk. On remand, such findings must be made and included in a proper hypothetical question to a VE.

The record is similarly lacking in evidence to support the ALJ's apparent alternative finding that plaintiff can perform sedentary work (*see* Tr. 25, 52). Such work, under 20 C.F.R. § 404.1567(a), "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles" and may require occasional walking and standing. Under the DOT definition, sedentary work involves "[e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or

4

condition exists from 1/3 to 2/3 of the time) . . . [and] sitting most of the time, but may involve walking or standing for brief periods of time." http://www.occupationalinfo.org/appendxc_1.html. Plaintiff testified he can sit for up to 30 minutes before having to stand and that he can lift up to 10-15 pounds (Tr. 35-36), and his treating physician has indicated plaintiff can do "no frequent lifting" and can sit "less than 6 hours in an 8-hour workday" (Tr. 546-47). The ALJ has offered no reasoned explanation for rejecting this evidence and concluding plaintiff is nonetheless capable of meeting the requirements of sedentary work on a full-time basis. As noted above, the ALJ made no specific findings regarding the length of time plaintiff can engage in such activity.

In an apparent attempt to accommodate plaintiff's need for a sit/stand option, the ALJ asked the VE to "assume a person who should be able to alternate position for up to five minutes approximately every 30 minutes" (Tr. 51). It is unclear what "alternate position" means, and it is not at all clear this is synonymous with a "sit/stand option." Testimony given in response to an ambiguous question has no evidentiary value. On remand, the ALJ must make specific findings as to how long plaintiff can sit before having to stand and how long he can stand before having to sit; and these findings must be presented to the VE in a proper hypothetical question to determine whether jobs exist for a person with such limitations.

The ALJ also erred in failing to develop the record and to evaluate the nature and extent of the side effects of plaintiff's many medications. The record indicates that plaintiff has been prescribed Coreg, Effient, Furosemide, Lasinopril, Metformin, Norvasc, Simvastin, Actoplus, Cardura, and Onglyza (Tr. 177, 216, 228, 406), several of which are known to cause dizziness and other side effects. *See* http://www.drugs.com. Plaintiff testified that he is "constantly dizzy" (Tr. 40, 43), and the record is replete with references to plaintiff's complaints about frequent episodes

of dizziness and lightheadedness (*see, e.g.*, Tr. 197, 200, 202, 209, 216, 256, 258, 262, 268, 279, 368, 376, 507, 512-14, 516-17, 529, 536, 547-48). The ALJ correctly notes evidence indicating that plaintiff's dizziness is "not cardiac related" (Tr. 25). But she offers no support for her finding that "[t]he record does not document that medication or treatment has caused adverse side effects that are inconsistent with the residual functional capacity assessment" (Tr. 24). Plaintiff identified four medications in particular he believes cause him dizziness (Tr. 216), and the record contains at least three physicians' opinions that plaintiff's "lightheadedness and dizziness" are caused by his medications (Tr. 256, 258, 262, 289). In any event, it was error for the ALJ to gloss over this medically and vocationally significant issue. On remand, the ALJ must (1) determine which medications plaintiff is taking and has taken during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects, particularly lightheadedness and dizziness, and (3) incorporate these findings in a proper hypothetical question to the VE to determine whether work exists in significant numbers that can be performed by a person experiencing such side effects.

On remand the ALJ must also further develop the record regarding plaintiff's neuropathy. Plaintiff testified that he must elevate his feet to relieve "stabbing" pain in his feet caused by neuropathy (Tr. 48). There is documentation in the medical records that plaintiff has neuropathy in his feet (Tr. 534), and his treating physician reports that plaintiff "needs to elevate his legs throughout the day due to diabetic neuropathy" (Tr. 547). Although the ALJ found that plaintiff's diabetes mellitus is one of his severe impairments, she nonetheless dismissed plaintiff's complaints of foot pain and his need to elevate his feet, apparently on the grounds that "[t]here is no electromyographic or other evidence of diabetic neuropathy" (Tr. 23). Neuropathy, especially

in the extremities, is a well known symptom of diabetes, and it is error to dismiss it merely because plaintiff did not undergo a particular test. According to the National Institutes of Health, diabetic neuropathy can be diagnosed based only on symptoms and a physical examination. *See* http://diabetes.niddk.nih.gov/dm/pubs/neuropathies/. On remand, the ALJ must further develop the record as to this impairment. The ALJ must obtain additional information from plaintiff's treating physician (e.g., via interrogatories) and/or refer plaintiff for a consultative examination to quantify the nature and extent of his diabetic neuropathy and his need, if any, to elevate his feet. Once such findings have been made, they must be included in a proper hypothetical question to a VE to determine whether jobs exist which plaintiff can perform notwithstanding this impairment. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is granted, and this matter is remanded for further administrative proceedings as directed above. This is a sentence four remand under 42 U.S.C. § 405(g).

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.

```
                                        S/ Bernard A. Friedman_____
Dated: May 21, 2014                     BERNARD A. FRIEDMAN
       Detroit, Michigan                SENIOR UNITED STATES DISTRICT JUDGE
```

7